UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Paul Engstrom,<br><br>    Defendant | 2:15-cr-00255-JAD-PAL<br><br>**Order Overruling Objections, Adopting Report and Recommendation, and Denying Motion to Suppress**<br><br>[ECF Nos. 43, 58, 68] |

Paul Engstrom and codefendant Daniel Dease are charged with conspiracy to distribute MDMA and related crimes. The indictment stems from an undercover sting operation by a DEA and Las Vegas Metropolitan Police Department (Metro) task force targeting Dease that culminated in Dease and Engstrom's arrests after a controlled buy in a parking lot. Engstrom moves to suppress the drugs, cash, and cell-phone evidence seized from his BMW, arguing that police lacked probable cause for the search.[1] After an evidentiary hearing, Magistrate Judge Leen recommends that I deny Engstrom's motion;[2] Engstrom objects.[3] Having reviewed the objected-to portions of Judge Leen's report and recommendation de novo, I adopt her findings and conclusions, overrule Engstrom's objections, and deny his motion to suppress.

**Background**

**A.    Engstrom's arrest and search**

After making three undercover purchases from Dease, task-force officer (TFO) Bourque arranged to buy five ounces of MDMA from Dease on August 26, 2015, in a shopping center parking lot.[4] TFO Bourque was supported by a team of task-force officers, and the plan was to arrest Dease

---

[1] ECF No. 43.

[2] ECF No. 58.

[3] ECF No. 68.

[4] ECF No. 59 at 11:14–23.

after the deal.

TFO Bourque met Dease in front of Kohl's Department Store. Dease entered TFO Borque's undercover vehicle, and he told TFO Bourque that he did not have the drugs and would need the buy money up front before his "connect" would release the drugs.[5] TFO Bourque declined to front the money, and indicated that he would not accompany Dease to meet the connect and that Dease would have to get his source to come to the parking lot to complete the transaction or the deal was off.[6] Dease and the TFO then briefly parted ways, with Dease agreeing to negotiate with his connect.[7] TFO Bourque left the shopping center parking lot; Dease did not.

Dease later texted the TFO stating that his connect had agreed to come to the parking lot[8] and that they would deal one ounce of MDMA at a time, with Dease acting as the runner.[9] After learning that the connect would be bringing the drugs to the parking lot, DEA technician Kurtz, who was stationed at a nearby Shell gas station, saw Dease's Mercedes pull up next to a BMW parked near a guitar store.[10] Kurtz saw Dease get in the passenger side of the BMW, where he remained for a short time before returning to his Mercedes and driving to the other side of the parking lot.[11] Kurtz gave a description of the BMW over the radio. TFO Pope also saw Dease pull up next to the BMW near the guitar store, get into the BMW, exit the BMW, and drive his Mercedes towards the Jack in the Box across the parking lot where TFO Bourque was parked.[12] Dease got out of his Mercedes and into TFO Bourque's undercover vehicle and handed him a foil package containing one ounce of MDMA

---

[5] *Id.* at 18.

[6] *Id.*

[7] ECF No. 58 at 2.

[8] ECF No. 59 at 23.

[9] *Id.* at 23:18–21.

[10] *Id.* at 61–62.

[11] ECF No. 58 at 7.

[12] *Id.* at 11.

in exchange for $1,600.[13] TFO Bourque then gave an arrest signal, and Dease was arrested.[14]

Immediately after Dease was busted, across the parking lot, TFOs Meegan and Hooten approached Engstrom's BMW. TFO Meegan removed Engstrom from the BMW, and TFO Hooten opened the rear-passenger door, purportedly to "clear" the BMW.[15] When TFO Hooten opened the rear door, he reportedly saw on the back seat an open paper Starbucks bag containing four foil bags.[16] The foil bags were seized, and TFO Pope arrested Engstrom.[17]

**B.     Report and recommendation**

After an evidentiary hearing, Magistrate Judge Leen found that the collective knowledge of the task-force officers established probable cause to arrest Engstrom and search the BMW from the point of the initial stop. She first found that the duration and scope of the traffic stop were reasonable because police arrested Engstrom within five minutes of the undercover buy from Dease.[18] Magistrate Judge Leen also found that the task force had ample probable cause to arrest Engstrom and search his BMW from the point of the initial stop because:

> Dease was in the parking lot to sell five ounces of MDMA to Bourque for $8,000. Dease did not have the MDMA in his first meeting with the undercover. After the first unsuccessful meeting, Dease texted Bourque to say his connect was nearby and would be coming to the Kohl's parking lot. Dease remained in the parking lot waiting until Engstrom arrived in his BMW. Dease got out of his vehicle and into the BMW for a short time. Dease went directly from the BMW to park next to Bourque. Dease got into the undercover vehicle with MDMA, and sold it to Bourque for $1,600.[19]

---

[13] *Id.* at 5.

[14] *Id.* at 5–6.

[15] *Id.* at 2.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 14.

[19] *Id.* at 16.

She concluded that, because TFO Bourque and Dease agreed to do the five-ounce deal one ounce at a time, after the first transaction occurred, it was objectively reasonable for the police to believe Engstrom's BMW contained more MDMA.[20] Because the magistrate judge found that the officers had probable cause to arrest Engstrom and to search the BMW at the time of the initial stop, she declined to address whether the Starbucks bag and its contents were in plain view or whether TFO Hooten "cleared" the BMW for officer safety or searched it.[21]

**C.     Engstrom's objections**

Engstrom argues that Magistrate Judge Leen incorrectly concluded that the officers *initially* had probable cause to arrest Engstrom and should have considered the illegality of the warrantless search of Engstrom's vehicle.[22] Engstrom also contends that the government failed to fulfill its mandatory discovery obligations under Federal Rule of Criminal Procedure 26.2 and that his confrontation-clause rights were violated during the evidentiary hearing [23]

## Discussion

**A.     Standards of review**

A district judge reviews objections to a magistrate judge's proposed findings and recommendations de novo.[24] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[25] The standard of review applied to the unobjected-to portions of the report and recommendation is left to the district judge's discretion.[26] Local Rule IB 3-2(b) requires de novo consideration of specific

---

[20] *Id.*

[21] ECF No. 58 at 16.

[22] ECF No. 68 at 6.

[23] *Id.* at 7.

[24] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003).

[25] *Id.*

[26] *Id.* (stating that a "district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise.") (emphasis in original).

objections only.[27]

**B.     Automobile searches under the Fourth Amendment**

In *Carroll v. United States*, the United States Supreme Court held that a police officer may search a car without a warrant if the officer has probable cause to believe that the car contains contraband or evidence of a crime.[28]  Probable cause exists if, based on the totality of the circumstances known to the officers at the time of the search, there is a "fair probability that contraband or evidence of a crime will be found in a particular place."[29]  Because *Carroll*'s automobile exception to the warrant requirement "is justified by the exigency created by the inherent mobility of vehicles as well as the relatively minimal expectation of privacy that exists with respect to automobiles," its application "does not turn on whether the car's owner or driver has already been taken into custody or the risk of mobility has otherwise been eliminated."[30]

**C.     Suppression is not warranted because the officers had probable cause to arrest Engstrom and to search his BMW and a warrant was not required.**

I agree with Magistrate Judge Leen's conclusion that, at the time police stopped Engstrom, they had probable cause to both arrest him and search his BMW.  As Magistrate Judge Leen detailed in her report and recommendation, the officers knew that Dease had come to the parking lot to sell five ounces of MDMA to TFO Bourque for $8,000.  Dease did not have the MDMA at the first meeting, and after TFO Bourque declined to front the cash for the drugs or follow Dease to the source, Dease agreed to negotiate with his connect to bring the MDMA to the parking lot.  A short time later, Dease texted TFO Bourque indicating that his connect had agreed to come to the Kohl's parking lot and that the deal would be done one ounce at a time with Dease acting as the middle man.

Police saw Dease remain in the parking lot waiting until Engstrom arrived in his BMW.  At

---

[27] *See* L.R. IB 3-2(b) (requiring *de novo* consideration of specific objections only); *Carillo v. Cate*, 2009 WL 2575888, at *1 (S.D. Cal. Aug. 17, 2009) (noting that "generalized objections" do not require *de novo* review).

[28] *Carroll v. United States*, 267 U.S. 132, 153 (1925).

[29] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[30] *United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012) (internal citations omitted).

least two task-force officers saw Dease get out of his vehicle, enter the BMW for a short time, and then drive directly to the Jack in the Box where he met TFO Bourque. Dease got into the undercover vehicle with MDMA and sold one ounce to TFO Bourque for $1,600. Dease had agreed to sell the TFO five ounces of MDMA in one-ounce increments. Thus, the officers had probable cause to believe that the remaining four ounces would be in Engstrom's nearby BMW, where it appeared Dease had obtained the first ounce. Because there was probable cause to arrest Engstrom and to search his BMW even absent observation of the Starbucks bag, I need not decide whether the bag's contents were in plain view or whether TFO Meegan opening the BMW's rear-door and looking inside constituted a search.

Engstrom cites to the officers' testimony at the evidentiary hearing and argues that even TFOs Hooten and Meegan did not "believe" that probable cause to arrest Engstrom and to search the BMW existed until *after* the contents of the Starbucks bag were discovered and they talked to TFO Bourque.[31] This argument fails for two reasons. First, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."[32] Thus, even if the officers subjectively believed they were conducting a *Terry* stop based on reasonable suspicion, that belief "does not invalidate the [search] as long as the circumstances, viewed objectively, justify [it]."[33] As detailed above, the circumstances in this case, viewed objectively, justified Engstrom's arrest and the search of his BMW.

Second, because the officers were working together on Dease's investigation and communicating with each other, the facts known to each of the officers can be considered in the aggregate to reach the probable-cause determination.[34] The testimony at the evidentiary hearing reflects that the task-force officers were communicating with each other as the investigation unfolded. For example, TFO Hooten testified on cross examination that someone on the surveillance

---

[31] ECF No. 68 at 7–8.

[32] *Devenpeck v. Alford*, 543 U.S. 146, 594 (2004).

[33] *Id.* (internal citations and quotations omitted).

[34] *See United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007).

team radioed that the BMW was the source of supply's vehicle.[35]  Thus, it is immaterial that TFO Hooten did not know all of the facts giving rise to probable cause until after he spoke with TFO Bourque because he was entitled to rely on his team members' conclusions that Engstrom was the source of the drugs.[36]

I find that the government has carried its burden to show that police had probable cause to search the BMW and that the automobile exception to the warrant requirement applies.  Accordingly, suppression is not warranted.

**D.    Evidentiary objections**

   **1.    Federal Rule of Criminal Procedure 26.2**[37]

Engstrom next argues that he was prejudiced by the government's failure to produce certain text/Wickr messages sent by Dease to TFO Bourque on the day of the bust.[38]  At the evidentiary hearing, TFO Bourque testified that he communicated with Dease through an application that Dease had instructed him to download called "Wickr."[39]  Wickr is an app where messages automatically destruct or delete, so TFO Bourque had to take pictures of texts with a camera to document them.[40]  On the day of the bust, TFO Bourque narrated various Wickr messages to the task force over the radio as he received them from Dease, but testified that he was unable to photograph his self-destructing Wickr texts from Dease on that day.[41]

---

[35] ECF No. 58 at 10.

[36] *Ramirez*, 473 F.3d at 1032 (stating that "we have applied the collective knowledge doctrine regardless of whether any information giving rise to probable cause was actually communicated to the officer" instructed to conduct the stop, search, or arrest) (internal citations and quotations omitted).

[37] This is the only objection raised by Engstrom that the government addressed in its 3-page response to Engstrom's 21-page objection.  ECF No. 69.

[38] ECF No. 68 at 13.

[39] ECF No. 58 at 6.

[40] *Id.*

[41] *Id.* at 6.

One of defense counsel's theories at the evidentiary hearing was that the police reports were sloppy or inconsistent. The police report stated that Dease texted TFO Bourque immediately after he got out of Engstrom's BMW stating that he had the drugs; yet that text was not produced by the government. On cross examination, TFO Bourque testified that he did not believe that any texts from the day of the bust had been photographed or produced.[42] TFO Pope testified that he had never seen that text, but that TFO Bourque had relayed that information to him. Shortly after the evidentiary hearing, the government produced a Wickr conversation between Dease and TFO Bourque on the day of the bust, including a text from Dease that reads, "I'm picking 1 up now where can I meet you?"[43]

Defense counsel inquired why the government had not produced the texts sooner, and the government forwarded her TFO Pope's response:

> I thought I sent everything I had before this hearing. When we went to the hearing, Det. Bourque and I went off of what you had. After the hearing I was looking through the CD's and noticed there was the "new discovery" about these texts. When I realized you must not have had them, I sent them to you.[44]

Engstrom argues that TFO Pope's response directly contradicts his testimony that he had never seen the text message in question and that all of TFO Pope's testimony should be stricken because the government failed to produce the texts before the evidentiary hearing.[45]

---

[42] ECF No. 59 at 34–35.

[43] ECF No. 68 at 14. The full exchange reads:

> Chessman: (Dease): I'm picking 1 up now where can I meet you?
> Bourque: Does that mean ull have the 5 and we just do this
> Chessman: All 5 will be brought to you. You'll pay when they weigh
> Bourque: I'm confused now
> Chessman: I'm using my credit to buy it then bring it to you.
> Bourque: When u got them I'll meet u at same spot...any games I'm out

ECF No. 68-2 at 1.

[44] ECF No. 68-3 at 2.

[45] ECF No. 14 at 14–15.

Federal Rule of Criminal Procedure 26.2 requires the government to produce, upon motion by the defendant, "any statement of the witness that is in [its] possession and that relates to the subject matter of the witness's testimony."[46]  In imposing sanctions against the government for violations of the Rule, courts consider "the culpability of the government . . . and the injury to the defendants."[47]

Engstrom's Rule 26.2 challenge fails because Rule 26.2 does not apply in this context.  The undisclosed text is not a statement of TFO Pope, it is a statement of Dease.  Because the statement is not TFO Pope's, the government's failure to disclose it at the conclusion of TFO Pope's direct testimony does not violate Rule 26.2 and does not require that his testimony be stricken.  Even if the rule did apply, striking TFO Pope's testimony would not be an appropriate sanction because the government's failure to produce the texts appears inadvertent, and defense counsel has not shown that Engstrom was injured by demonstrating how she would have cross examined TFO Pope differently if she had these texts.  I therefore decline to strike TFO Pope's testimony as a sanction for the government's failure to produce the texts before the evidentiary hearing.

### 2. *Confrontation clause*

Finally, Engstrom argues that certain testimony provided by TFO Pope at the evidentiary hearing was elicited in violation of Engstrom's rights under the confrontation clause.[48]  Engstrom takes issue with a single statement elicited by Magistrate Judge Leen that he did not have an opportunity to cross examine TFO Pope (or Dease, who did not testify) about: "I also spoke with Mr.–Mr. Dease who told me that Mr. Engstrom was his source."[49]

Even if the challenged testimony violated Engstrom's confrontation-clause rights, any error is harmless because I find that the officers had probable cause to search the BMW even excluding the challenged statement.  As described above, the police had probable cause to believe that Engstrom

---

[46] The rule also applies to defense witnesses other than the defendant himself.

[47] *United States v. Finnegan*, 568 F.2d 637, 642 (9th Cir. 1977).

[48] *Id.* at 15.

[49] *Id.* at 15 (citing Transcript, 148:19-149:22).

was the source and that more drugs would be found in his BMW based on their observations of Dease and Engstrom in the parking lot and the close physical and temporal proximity of the drug deal; Dease's statement to TFO Pope *after* the bust explicitly naming Dease as his source is not necessary to my finding that the police had probable cause to search the BMW. Thus, any error in eliciting the challenged statement is harmless and does not require suppression.

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that **Magistrate Judge Leen's report and recommendation [ECF No. 58] is ADOPTED, Engstrom's objections [ECF No. 68] are OVERRULED, and Engstrom's motion to suppress [ECF No. 43 ] is DENIED.**

Dated this 16th day of May, 2016.

_____
Jennifer A. Dorsey
United States District Judge